### DRAPER *v.* PALMER *et al.*

(*Supreme Court, Special Term, New York County. May 21, 1888.*)

TRUST—LIMITATION OF TRUST-ESTATE—DEATH OF CESTUI QUE TRUST—ACCUMULATION OF TRUST FUND.

A deed, executed as one of a series creating trusts for the benefit of the grantor's lineal descendants, conveyed real estate to the grantee as trustee for two of his grandchildren, to hold the property, "so that, by means of these presents, the said party of the third part now is vested with a future estate in fee-simple, in expectancy, to commence in possession" on the death of the grantor, in trust to apply the rents and profits equally to the use of the grandchildren during life; and, when either of them attains the age of 21 years, to pay to him absolutely the accumulations of his share of the rents and profits; and, on his attaining the age of 30 years, one-half of the land, and of any additions to the trust fund, to be conveyed to him. If either of them die before attaining that age, his share was to be conveyed to his children, if he left any; and, if he left none, to his brother. One of the grandchil-

dren died before either of them attained the age of 21 years. *Held*, that his share of the accumulation, and the legal title to his share of the land, vested in his brother subject to the trust.

Action by Mary Anna Palmer Draper, as trustee, against Richard Suydam Palmer and others.

*Strong & Cadwallader*, for plaintiff. *Henry S. Snow*, for defendants.

O'BRIEN, J. This is a suit brought by plaintiff for the purpose of obtaining a judicial settlement of her accounts, and to obtain a judicial construction of the trust created by Courtlandt Palmer, in so far as it relates to the share of his grandchild John Arnot Palmer, who died under age, unmarried, and without issue. The creator of these trusts conveyed, by a series of deeds, certain property to trustees for the benefit of his lineal descendants. He had four children: Richard Suydam Palmer, Courtlandt Palmer, Charles Phelps Palmer, and the plaintiff, Mary Anna Palmer Draper. He originally created a trust in an undivided one-fourth part of said property for the benefit of each of these children. These trusts were created, as to each one-fourth, by separate deeds, and in each of these deeds was contained a provision in the nature of a reserved power of revocation and appointment, under which the creator of the trusts might at any time, and from time to time, revoke the trusts so declared, provided he should substitute therefor new trusts wholly for the benefit of his children and lineal descendants, or some of them. The estate granted by each deed was a future estate in expectancy, to take effect upon the death of the grantor. The present action relates only to the property originally placed in trust for the benefit of Richard Suydam Palmer. Under the reserved power mentioned, these trusts were from time to time modified and changed, and, after the death of Richard Suydam Palmer, they were wholly revoked by deed dated September 13, 1870. Richard Suydam Palmer left a widow, who afterwards became the wife of the defendant George C. Haven, and two children, John Arnot Palmer and Richard Suydam Palmer, second. By the deed of September 13, 1870, the trusts theretofore declared in favor of Richard Suydam Palmer were revoked, and his widow and children were substituted as beneficiaries and Henry Draper as trustee.

A portion of the property thus conveyed in trust for the benefit of the widow and children of Richard Suydam Palmer was afterwards, by deed dated November 20, 1872, conveyed, under the reserved power, to William R. Palmer, nominally upon other trusts, but in reality to facilitate the making of a mortgage thereon. The portion thus withdrawn from the trusts was almost immediately restored by deed to Henry Draper, trustee, dated November 22, 1872. The trusts created by these deeds of September 13, 1870, and November 22, 1872, are those involved in the present suit. The language of the two deeds is identical. Courtlandt Palmer, the grantor in all the deeds, died in 1874, and thereupon Henry Draper entered into and took possession of such one-fourth, and continued to act as such trustee until his death, November 20, 1882. Afterwards the plaintiff was appointed trustee in his place. Accountings, as trustee, having been made from time to time by Henry Draper and plaintiff as trustee, this action, so far as an accounting is concerned, relates to the period from the 15th of September, 1884, to the date of the filing of her accounts in this action. John Arnot Palmer, son of Richard Suydam Palmer, died on the 5th day of November, 1885, leaving his brother, Richard Suydam Palmer, second, also an infant, surviving. Upon the death of John Arnot Palmer, the contention arose as to the devolution of that portion of the trust property, both principal and accumulated income, which had been held for his benefit during his life under the deeds mentioned. Objection was taken by one of the counsel before the court that the complaint did not set out facts enough to constitute a cause of action, and that in this proceeding nothing remained for the court but to settle and adjust the accounts of the trustee.

The pleadings, however, of the parties showing diverse claims, the able and lengthy arguments presented on the hearing in favor of the various contentions, and the precedents allowing, in cases of doubt and uncertainty, an action to be brought by a trustee for the construction of wills and trust deeds, make this action, as to form and substance, an eminently proper one. Upon an accounting, to which it is conceded the plaintiff is entitled, the trustee should receive such instructions as may enable her to properly dispose of the trust fund, which necessarily involves a construction of the instrument creating her a trustee. So far as the accounts of the trustee are concerned, any objections filed thereto can be disposed of on the reference. If none are filed, the accounts will stand approved, subject, however, to such modifications, as to the disposition of the trust fund, as may be rendered necessary by the decision on the other questions submitted in this action. The two questions to be passed upon are: *First,* what, on the death of John Arnot Palmer, became of the *corpus* of the share of the property conveyed by the trust deeds? Did it go absolutely to his brother, in fee, free from trusts? And, if not, what did become of the *corpus* of his share? *Second,* on the death of John Arnot Palmer, what became of the accumulations which, up to that date, were in the hands of the trustee, arising from the surplus income which had not been applied to his education and support, and which, if he had reached the age of 21 years, would have been paid over to him absolutely?

The provisions of the deeds material to the questions presented are substantially as follows: They grant one undivided one-fourth part of the land in question to the trustee, to have and to hold the same, from and after the decease of Courtlandt Palmer, Sr., forever; "so that, by means of these presents, the said party of the third part now is and shall be vested with a future estate in fee-simple, in expectancy, to commence in possession at a future day, when the said Courtlandt Palmer, Sr., shall depart this life, saving and reserving the said one-fourth part to the said Courtlandt Palmer, Sr., for his own use, for and during his natural life." The trusts upon which the grant is made, are as follows: *First,* on the death of Courtlandt Palmer, Sr., to enter, and thenceforth to receive the rents and profits, and apply the same as follows: One equal half part thereof shall be applied to the use of John Arnot Palmer during his life, and the other half part thereof shall be applied to the use of Richard Suydam Palmer, the second, during his life; and further provided that if there be any surplus of such rents and profit, while either John A. Palmer or Richard Suydam Palmer, second, shall be under the age of 21 years, over and above what shall be necessary, proper, and convenient for his full support, education, improvement, and comfort, such surplus shall accumulate for his benefit, and on his attaining the full age of 21 years the whole of such surplus and accumulations shall be paid to him for his own use absolutely; thenceforth, until he shall attain the age of 30 years, the whole of his one-half of said rents and profits shall be paid to him for his own use absolutely, upon his receipt in writing, as the same shall accrue from time to time; and on his attaining the age of 30 years one equal undivided half part of said above-described fourth part of said lands and premises, and the equal undivided half part of all such additions as shall have been made to the trust funds as by its presents provided, shall be conveyed, assigned, transferred, and delivered unto him in fee-simple absolute, for his own use forever, provided his mother, if then living, consent to such transfer of the principal, and he be not then insolvent, so that it could be reached by creditors. *Secondly.* If either of said John Arnot Palmer and Richard Suydam Palmer, second, shall depart this life before he shall attain the age of 30 years, leaving a child or children him surviving, the said half part of said lands, premises, and trust fund shall be conveyed, assigned, and delivered to such child or children, or such of them, and in such shares and proportions, as shall by will or written appointment direct, and, in default of such will or appointment, in equal shares, to be to them, their

heirs and assigns, for their own use forever; and in case he shall so die under 30 years of age, leaving no child him surviving, then the same shall be so conveyed, assigned, and delivered to the other of said John Arnot Palmer and Richard Suydam Palmer, second, if then living; and, if not then living, to his children then surviving, in equal shares, to be to them, and their heirs and assigns, for their own use forever; and, in default of such child or children, then the remainder over to Mrs. Draper, Courtlandt Palmer, and Charles Phelps Palmer, the other children of the grantor, and their issue. In reference to the rival claims made by the defendants in this action, the trustee takes no position, but the defendants, as among themselves, take two several and distinct views as to the devolution of the *corpus* of the estate and the accumulations upon the death of John Arnot Palmer.

On the one side it is contended that the fee in the one-eighth, which constituted the *corpus* of the estate, and which has been held for the benefit of John Arnot Palmer during his life-time, upon his death vested as an absolute legal remainder in fee-simple vested in possession in his surviving brother, Richard Suydam Palmer. On the other hand, it is insisted that the trust in this one-eighth was not terminated by such death, but still continues. It is unnecessary, in view of the very elaborate arguments presented in support of these two several contentions, for the court to present at length reasons for its conclusion. The deeds themselves are to be read, and the intention of the creator of the trusts ascertained; and, if there is no legal objection to such intention, it should be carried out. As to the *corpus* of the estate, the clear and unambiguous language of the deeds seems to me to lead to but one conclusion, and that is that the legal remainder, in fee-simple, vested in the surviving brother, Richard Suydam Palmer, subject, however, to the expressed intention of the creator of the trust, that until either John Arnot Palmer, Richard Suydam Palmer, or any person other than those named, and who shall become entitled to take any share or interest in said lands or said trust fund, attain the age of 21 years, such share shall be held by the trustee, who shall apply the rents and profits thereof until the person entitled shall attain the age of 21 years. As to the accumulations, several views were presented as to what should become of the sum in the hands of the trustee on the death of John Arnot Palmer. It is contended with much force that the same became vested in John Arnot Palmer as his absolute property during his life-time, and upon his death passed to his administrators. If this contention is allowed, it will be noticed that the effect would be to give these accumulations to his mother, his brother, and his sister of the half-blood, the child of Mr. and Mrs. Haven, in equal shares. Considering the language of the deeds themselves, and the intention of the grantor frequently expressed throughout the series of deeds, that the trusts should be for the benefit wholly of the children and lineal descendants of said Courtlandt Palmer, Sr., I am of the opinion that the accumulations were really for the benefit of both minors, and on the death of John Arnot Palmer they were by the trust limited over to his brother, Richard Suydam Palmer, and are his property; to be held, however, by the trustee, pursuant to the terms of the deeds of trust, for the use of Richard Suydam Palmer until he arrives at the age of 21 years.

I am aware that this view is subject to the criticism that grave doubt exists as to whether the possession and right of enjoyment in and to accumulations which belong to a minor can be limited over to a new beneficiary, to continue beyond the time when the first minor reaches the age of 21. I can find however, no case which positively holds that such a provision as to accumulations for the benefit of one minor cannot go, in case that minor should die before reaching the age of 21, to another beneficiary, to be retained by the trustee during the latter's minority, or which holds that a trust to accumulate for the ultimate benefit of two minors in being cannot go to the survivor. I have, in the absence of such binding authority, in order to effectuate the

intention of the creator of the trust, concluded that accumulations for a minor, to be paid at majority, with a gift over in case such minor should fail to reach 21 years, is good; the only doubt in my mind being, as before stated, as to whether legally, by the gift over to the remainder-man, the same can be further held by the trustee for his use during minority. As to the gift over of accumulations, the case of *Wood* v. *Mitcham*, 92 N. Y. 375, is in point. In that case it was a gift of accumulations to a minor to be paid if she reached the age of 21 years, and a gift over of the accumulations if she failed to reach the age of 21. It was held that the accumulations passed by virtue of a limitation in remainder, and the accumulations there went, pursuant to the limitation of the trust deeds, to the sisters of the deceased, and not, as claimed in this case, to the administrator of the deceased child, and therefore to be divided between the whole blood and the half blood.

It will be thus seen that my view as to the accumulations is that it was not intended as an absolute gift of property of which the title was always in John Arnot Palmer, although the enjoyment was postponed, or of which he could have disposed of by will, and which, therefore, at his death would go to his administratrix or administrator. The language used in the deeds to express the intention of the grantor as to both the *corpus* and accumulations, or, in other words, the entire trust fund, was to create in the two grandchildren, as to the *corpus*, cross-remainders in fee, to take effect on the death of either under 30, without issue; that, as to the accumulations, there was a gift over on the death of one to the other,—the property or trust fund, however, to be cared for by the trustee, the same to be applied to the use of the remainder-man or the beneficiary of the gift, or remainder over until such time as he should reach the age of 21 years. This disposition of the *corpus* and accumulations would fully carry out the oft-expressed intention that no one should profit from the trust created but the lineal descendants of the creator of the trusts. And, in looking at the trust deed as a whole to determine what is the meaning of the words "trust fund," my conclusion is that it was intended to embrace, not only the original property included in the trust, but any subsequent property that might have been added thereto, including also the accumulations. It is true that the words "trust fund" are employed in different parts of the instrument, and in a different sense; but in the clause in question, if taken in connection with the reading of the other provisions of the deed, I think it must be concluded that the expression was used in the sense above indicated. Judgment accordingly.